UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VAHDETA SMAJIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-01819-CMS |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the Court are Plaintiff Vahdeta Smajic's Social Security Complaint and Brief brought pursuant to 42 U.S.C. § 405(g) (Docs. 1, 14). For the reasons stated herein, the Court affirms the decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits.

**BACKGROUND**

**I. Five-Step Analysis Used by the Social Security Commissioner**

When reviewing a claim under 42 U.S.C. § 405(g), the Commissioner applies a five-step sequential test. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Teabeau v. Kijakazi*, No. 4:21-cv-703-NCC, 2022 WL 4598672, at *2 (E.D. Mo. Sep. 30, 2022) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). "The claimant has the burden of proof to show [he] is disabled through step four," with the burden of production shifting to the Commissioner at Step Five. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young v. Apfel*, 221 F.3d 1065,1069 n.5 (8th Cir. 2000).

The first step is an evaluation of whether the claimant is engaging in work activity and whether any such work constitutes "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* Second, the Commissioner must examine the evidence to determine whether the claimant suffers from a severe "impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)). Third, the Commissioner evaluates the severity of the impairment, and if the impairment crosses a threshold set forth in the regulations, the claimant is disabled. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the impairment is found to be severe but does not meet the threshold required for a presumptive finding of disability in Step Three, the Commissioner assesses the claimant's "residual functional capacity" (RFC) to perform sustained work based on the evidence in the record. *See* Sections 416.920(e), 416.945; *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996) (stating the SSA's policy interpretations regarding the RFC assessment). Following the determination of the claimant's RFC, the Commissioner assesses whether the claimant can perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). If so, the claimant is not disabled. *Id.*

Finally, at Step Five, the Commissioner determines whether the claimant can make adjustment to other work, given the claimant's RFC, age, education, and work experience. Section 416.920(a)(4)(v). If the claimant can make such adjustment, he is not disabled. *Id.* Further, if a claimant reaches Step Five, the Social Security Administration must meet a limited burden of providing evidence "that other work exists in significant numbers in the national economy that [claimant] can do." Section 416.960(c)(2).

## II. Factual Background

Plaintiff resides in St. Louis, Missouri. (Doc. 1 at 1). On July 18, 2023, and July 11, 2023, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. (Doc. 14 at 1). Plaintiff suffers from "degenerative disc disease, median nerve entrapment,[1] venous insufficiency, anxiety disorder and post-traumatic stress disorder . . . ." (Doc. 1 at 2).

The administrative law judge (ALJ) held a hearing on August 21, 2024, and issued a decision on October 15, 2024. (Doc. 7-3 at 56, 70). The ALJ found in Step One that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of her disability and in Step Two that Plaintiff has the severe impairments of "degenerative disc disease, median nerve entrapment, venous insufficiency, anxiety disorder and post-traumatic stress disorder . . . ." *Id.* at 59. In Step Three, the ALJ determined Plaintiff's severe impairments do not meet the threshold for an automatic finding of disability. *Id.* at 59–62.

In Step Four, the ALJ found that Plaintiff has the RFC to "perform sedentary work," except that she can "occasionally climb ramps and stairs, stoop, kneel, crouch and crawl but never balance . . . or climb ladders, ropes or scaffolds." *Id.* at 62. The ALJ found Plaintiff "able to frequently handle and finger. She must avoid exposure to unprotected heights and hazardous machinery. She is able to perform simple, routine tasks, but she must have only gradual changes in job setting and duties." *Id.* Plaintiff was found to also be "able to tolerate occasional contact with supervisors and co-workers, but she must have no contact with the general public." *Id.*

---

[1] Median nerve entrapment is commonly known as a pinched nerve. *Median Nerve*, Cleveland Clinic (last visited Sep. 24, 2026), https://my.clevelandclinic.org/health/body/21889-median-nerve [https://perma.cc/AEM6-UVJU].

Finally, in Step Five, the ALJ found that Plaintiff "is unable to perform any past relevant work" in industry sewing based on the vocational expert's testimony "that an individual with the claimant's age, education, work experience and [RFC] would be unable to perform claimant's past work." *Id.* at 68. The ALJ found, citing testimony of the vocational expert, that Plaintiff could perform the requirements of representative occupations, such as an optical goods assembler, packing machine tender, and circuit board screener. *Id.* at 69. The ALJ concluded that, given Plaintiff's RFC, age, education, work experience, and ability to perform other jobs that existed in significant numbers in the national economy, she is not disabled. *Id.* at 69–70.

### III. Procedural Background

Plaintiff filed her Complaint on December 15, 2025. (Doc. 1). Defendant Frank J. Bisignano, Commissioner of the Social Security Administration, filed the Certified Social Security Transcript on February 10, 2026. (Doc. 7). Plaintiff filed her Social Security Brief on June 11, 2026, challenging the ALJ's determination on the bases that she did not properly evaluate Plaintiff's pain, failed to properly evaluate the medical opinion evidence, and the RFC was not based on substantial evidence. (Doc. 14). Defendant filed his Social Security Cross Brief on September 22, 2026. (Doc. 19).

## LEGAL STANDARD

The Court will affirm the decision of an ALJ "'if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole.'" *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)). In other words, the factual findings of the Commissioner are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405; *see also Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The United States Supreme Court identifies "substantial evidence" as a term of art and

directs a court using that standard to identify whether there is "sufficient evidence" in the existing administrative record "to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).

The standard for substantial evidence is not high. *Id.* at 103. "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Supreme Court further defines "more than a mere scintilla" as meaning only that there must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations omitted).

Alleged legal error by the ALJ is reviewed *de novo*. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (citing *Collins*, 648 F.3d at 871) (internal quotations omitted).

Furthermore, while the Court "must consider evidence in the record that fairly detracts from, as well as supports" the agency decision, the Court will not reverse an agency decision "merely because [it] find[s] that substantial evidence exists in the record that would have supported a contrary outcome." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (internal quotations omitted). Instead, the Court "will disturb the [ALJ's] decision only if it falls outside the available zone of choice." *Bonham v. Bisignano*, 177 F.4th 934, 940 (8th Cir. 2026) (internal quotations omitted) (alteration in original).

## DISCUSSION

Plaintiff argues the ALJ did not properly evaluate Plaintiff's pain because the ALJ "failed to evaluate almost all of the Polaski factors[2] . . . .," the ALJ did not properly evaluate the supportability and consistency of the medical opinion evidence, and the RFC is not supported by substantial evidence because the ALJ gave too much weight to the State Agency Medical Consultants (SAMCs). (Doc. 14). The SAMCs are medical professionals who contract with the Social Security Administration to analyze a plaintiff's medical records.

### I. The ALJ Properly Evaluated Plaintiff's Pain.

Plaintiff argues the ALJ failed to "make an express credibility determination detailing reasons for discrediting [Plaintiff's] testimony" and failed to evaluate most of the *Polaski* factors. (Doc. 14 at 3–5).

Plaintiff claims the "medical evidence substantiates" Plaintiff's subjective complaints "of severe low back pain, hand pain, and leg swelling." *Id.* at 4. Plaintiff argues that, because she "got an MRI, attended physical therapy, saw pain management where she received multiple injections and eventually received lumbar surgery," her complaints about "aching, burning, throbbing, sharp, [and] severe . . . ." pain were supported. *Id.* Therefore, she argues, the ALJ's finding of inconsistency is improper. *Id.*

Contrary to Plaintiff's claims, the ALJ properly evaluated Plaintiff's pain and provided adequate reasoning for discrediting Plaintiff's claims. For example, the ALJ noted that, despite Plaintiff's history of pain, limited motion, and needing to lay down "four to five times a day,"

---

[2] The *Polaski* factors are a claimant's "prior work history; daily activities; duration, frequency and intensity of the pain; dosage, effectiveness and side effects of medications; precipitating and aggravating factors; and functional restrictions." *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)).

physical exams revealed that Plaintiff did not use any assistive device, "was able to walk on her heels and toes," had fully intact "fine and gross motor skill," and that Plaintiff herself "stated she could tend to her personal care, prepare simple meals and do light cleaning." (Doc. 7-3 at 68–69). Also, the ALJ noted that, despite Plaintiff's mental impairments, "examinations showed her affect was normal, and she presented as pleasant and cooperative." *Id.* at 68.

An ALJ's decision is not required "to include a discussion of how every *Polaski* 'factor' relates to the claimant's credibility." *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007) (internal citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (stating an ALJ need not explicitly discuss each factor). Accordingly, the ALJ did not err in not fully discussing each *Polaski* factor.

Thus, the ALJ properly considered Plaintiff's subjective complaints and adequately supported her decision regarding inconsistencies. Even if Plaintiff can point to contrary evidence in the record, that evidence does not place the ALJ's assessment beyond the "available zone of choice." *Bonham*, 177 F.4th at 940 (internal quotations omitted). As noted, the ALJ properly observed evidence in the record that she found inconsistent with Plaintiff's complaints and explained why she found the evidence and Plaintiff's complaints inconsistent. This amounts to substantial evidence to support the ALJ's discounting Plaintiff's subjective complaints.

**II. The ALJ Properly Weighed Opinion Evidence.**

Next, Plaintiff argues the ALJ failed to properly evaluate the administrative medical findings of SAMCs and other medical professionals because she failed to articulate the supportability and consistency factors of the medical professionals' opinions. (Doc. 14 at 5–8).

Plaintiff's argument fails because the ALJ's findings were consistent with agency regulations and supported by substantial evidence. When "substantial evidence supports the

Commissioner's decision, we may not reverse even if we might have decided the case differently." *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (internal quotations omitted). The ALJ analyzed the medical records and supported her conclusions throughout seven full pages. *See* (Doc. 7-3 at 62–68) (describing the medical record in detail and providing reasons why she found the record inconsistent). Further, the ALJ stated she did "not defer or give any specific evidentiary weight" to the prior administrative medical findings and personally analyzed each medical professional's opinion. *Id.* at 65.

The ALJ provided specific reasons for her decision. And these reasons addressed the supportability of the medical opinions. *See* 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency . . . ."); *see also* 20 C.F.R. § 404.1520c(c)(1) ("Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be.").

For example, the ALJ explained that she found the opinion of Dr. Lane, a consultative examiner, to be unpersuasive because Dr. Lane opined that Plaintiff had "moderate to marked limitations in understanding, remembering or applying information . . . ." but Plaintiff "presented as cooperative, and her manner of relating was adequate" and her examinations "showed her affect was normal." (Doc. 7-3 at 66). Further, the ALJ explained that she found the opinions of Dr. Costley and Dr. Schell, both SAMCs, persuasive because they were "consistent with the claimant's treatment notes that show her gait was antalgic, but she did not use an assistive to ambulate, and she was able to walk on her heels and toes." *Id.* The ALJ supported her findings by highlighting, among other things, that Plaintiff's examinations showed she had only "mildly diminished strength" and her "thought process was coherent/goal directed . . . ." *Id.* at 67. Thus, the ALJ

properly evaluated the medical professionals' findings and adequately articulated supportability and consistency.

Plaintiff's argument is also contrary to the law. "'[T]here is no requirement that an RFC finding be supported by a specific medical opinion.'" *See Bonham*, 177 F.4th at 940–41 (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). In fact, the Eighth Circuit has upheld an RFC determination in the absence of a "direct, 'functional' medical opinion" where the medical record was adequately developed. *Id.* (citing *Hensley*, 829 F.3d at 930–32). Considering the hundreds of pages of medical records, to call the medical record in this case "adequately developed" would be an understatement. As discussed *supra*, the ALJ thoroughly analyzed the medical record and considered numerous facts in addition to medical professionals' findings. Thus, the ALJ properly analyzed the facts and the medical professionals' opinions.

**III. The RFC Determination is Supported by Substantial Evidence.**

Finally, Plaintiff argues the ALJ improperly "rel[ied] on non-examining physician[s'] RFC when the agency RFC assessments, completed almost a year prior to the hearing, were not based upon the full record." (Doc. 14 at 9). The ALJ found the Plaintiff had an RFC to do sedentary work. (Doc. 7-3 at 62). But an ALJ need not support his findings with specific medical opinions. *See Bonham*, 177 F.4th at 940–41. Because Part I of this Discussion Section already identifies the substantial evidence supporting the ALJ's decision, the Court moves on to Plaintiff's concerns regarding the RFC determination.

First, as discussed *supra*, the ALJ explained why she found the opinion of each medical professional either persuasive or unpersuasive. (Doc. 7-3 at 62–68). The ALJ discussed the medical professionals' opinions in detail and clearly addressed the reasons she found some of those opinions unpersuasive.

Second, contrary to Plaintiff's assertion, an ALJ need not adopt a medical professional's suggestions in their entirety. *See Austin*, 52 F.4th at 729 (stating an "ALJ is free to accept some, but not all, of a medical opinion"). Thus, there is "relevant evidence" that a "reasonable mind might accept as adequate to support" the ALJ's conclusion. *See Biestek*, 587 U.S. at 102.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

So ordered this 30th day of September 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE